Vickie TAILOR,[1] Respondent
Below, Appellant,

v.

Joann BECKER, Petitioner
Below, Appellee.

No. 468, 1996.

Supreme Court of Delaware.

Submitted: Jan. 6, 1998.

Decided: March 18, 1998.

Vickie Tailor, pro se.

Kester I.H. Crosse, Wilmington, for Appellee.

Alan N. Cooper, of Berkowitz, Schagrin, Coonin, Cooper & Dougherty, P.A., Wilmington, and Janine N. Howard, of Delaware Legal Services, Inc., Wilmington, Amici Curiae.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT and BERGER, JJ., constituting the Court en Banc.

1. The names used in this decision are pseudonyms selected by the Court pursuant to Supr. Ct.R. 7(d).

BERGER, Justice:

In this appeal, we consider a challenge to the recently enacted stepparent custody statute. The statute effectively gives a stepparent the same status as a natural parent, for purposes of deciding custody, if (i) the child is residing with the stepparent and a natural custodial parent, when (ii) the natural custodial parent dies or becomes disabled. In this case, the Family Court awarded residential custody of a young child to her stepmother without giving any priority to the natural mother and without finding that the natural mother had abandoned the child or otherwise relinquished her parental rights. On appeal, the natural mother [2] argues that the stepparent custody statute conflicts with established law and is unconstitutional. We conclude that, although the statute does change prior law in some respects, the legislature is empowered to make those changes and the stepparent statute does not impair the constitutional rights of natural parents.

### I. Factual and Procedural Background

Donna Becker was born on September 1, 1993. For the first year of her life, Donna lived with her mother, Vickie Tailor. In September 1994, the Delaware Division of Family Services placed Donna with her father, Richard Becker. Shortly thereafter, both of Donna's parents petitioned for custody and, in November 1995, the Family Court awarded residential custody to Richard.

In July 1996, Richard died. At that time, Donna had been living with Richard and his wife, Joann Becker, for almost two years. Upon learning of Richard's death, Tailor filed a motion to modify the outstanding custody order. Joann countered with her own petition for custody. The Family Court conducted a hearing on the cross petitions and determined that it was in Donna's best interest to remain with Joann. The custody order continued Tailor's weekend visitation and added visitation during the summer and at Christmas time.

### II. Discussion

The stepparent custody statute, 13 *Del.C.* § 733, enacted in 1995, provides:

Notwithstanding that there is a surviving natural parent, upon the death or disability of the custodial or primary placement parent, the Court, at the request of the stepparent shall continue the placement of the child(ren) with the stepparent pending a hearing on the merits, provided the child(ren) has resided with the stepparent immediately prior to the death or disability of the custodial or primary placement parent. Where the child(ren) has so resided with the stepparent the Court shall apply the provisions of § 722 of this title and may grant permanent custody or primary physical placement to the stepparent. If the Court grants custody or primary physical placement of the child(ren) to the stepparent, the stepparent shall have all of the rights and obligations of a parent until such time as the parent no longer has custody or primary placement of the child(ren).

■ Tailor argues that parents have a natural right to the custody of their children and should not be deprived of that right except in extraordinary circumstances. She notes that, prior to the recent enactment, Delaware's statutory scheme consistently protected natural parents' primacy in matters relating to their children. For example, there are only five grounds for termination of parental rights: (i) relinquishment; (ii) abandonment; (iii) mental incompetence; (iv) conviction of a felony involving the child; or (v) failure to plan for the child's physical, mental or emotional needs.[3] The Family Court does not even consider the best interests of the child until one of the statutory grounds for termination has been established by clear and convincing evidence.[4]

---

2. The natural mother is appearing *pro se*. By Order dated February 24, 1997, this Court appointed Alan N. Cooper, Esq., as *Amicus Curiae,* to supplement the natural mother's arguments. We gratefully acknowledge the *pro bono* participation of Mr. Cooper and Janine N. Howard, Esq. We will consider the arguments of the natural mother and *amici* together.

3. 13 *Del.C.* § 1103.

4. *In Interest of Kelly Stevens,* Del.Supr., 652 A.2d 18 (1995).

Natural parents are afforded similar protection in most custody proceedings. Generally, a natural parent will prevail over "any other person" in a custody dispute unless the court finds that the child is dependent or neglected.[5] The stepparent custody statute eliminates that preference without any showing that the child's welfare is in jeopardy. The statute instructs the court to use a "best interests" analysis only in deciding whether a child, whose natural custodial parent dies, should remain with the stepparent or be placed with the surviving natural parent.

■ Tailor argues that the stepparent custody statute thus conflicts with Delaware's statutory scheme and is invalid. This argument lacks merit. The fact that new legislation may conflict with prior statutes does not mean that the new law is invalid. The General Assembly "has all legislative power not expressly or impliedly limited by the Constitution."[6] To the extent that there is any conflict between two or more statutes, the more specific and more recent controls.[7] In this case, the stepparent custody statute is the most recent expression of legislative intent in the limited circumstance where a stepparent seeks custody after the death of the natural custodial parent. Thus, it supersedes the earlier, more general provisions of 13 *Del.C.* § 721(e), giving preference to natural parents unless the child is dependent or neglected.

Tailor also argues that the stepparent statute is unconstitutional because it divests natural parents of their parental rights without affording them due process. She relies on state and federal decisions addressing a parent's right to adequate notice, representation, and other procedural safeguards when the State petitions to terminate parental rights.[8] Without explanation, Tailor equates a custody decision with one terminating all parental rights. She then suggests that substantive protections for natural parents, similar to those found in the termination statute, are constitutionally mandated in the stepparent custody statute.

■ In analyzing this substantive due process claim, we follow the approach adopted by the United States Supreme Court, and begin by precisely identifying the interest that is threatened.[9] It is a natural parent's interest in obtaining custody of a child that has been living with a stepparent. This Court, like the United States Supreme Court, recognizes that, "[f]ewer rights are more sacred than those which derive from the parent-child relationship."[10] Thus, we agree with Tailor that her interest in obtaining custody of her daughter is constitutionally protected.

■ The question then becomes whether the stepparent custody statute adequately protects that interest, when it provides that the custody decision is to be based only on the "best interests" of the child. We are satisfied that it does. First, the stepparent custody statute does not sever the natural parent's relationship with his or her child. The natural parent is free to develop and maintain a close relationship with the child through regular visitation, telephone and mail contact, and receipt of information about the child's health, activities, and progress in school.[11] Moreover, the natural parent may seek modification of the custody order at any time.[12] Thus, the stepparent statute does

---

**5.** 13 *Del.C.* § 721(e).

**6.** *Opinion of the Justices,* Del.Supr., 295 A.2d 718, 720 (1972).

**7.** *State v. Cook,* Del.Supr., 600 A.2d 352, 355 (1991).

**8.** *See, e.g., Lassiter v. Dept. of Social Services,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981); *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Matter of Burns,* Del.Supr., 519 A.2d 638 (1986).

**9.** *Washington v. Glucksberg,* —— U.S. ——, ——, 117 S.Ct. 2258, 2269, 138 L.Ed.2d 772 (1997).

**10.** *Daber v. Div. of Child Protective Serv.,* Del. Supr., 470 A.2d 723, 726 (1983). See, also: *Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972) ("The rights to conceive and to raise one's children have been deemed 'essential,' 'basic civil rights of man,' and 'rights far more precious … than property rights.'") (Citations omitted.)

**11.** 13 *Del.C.* §§ 727, 728.

**12.** 13 *Del.C.* § 729.

not work the "unique kind of deprivation" that follows when the parent-child relationship is totally and irrevocably severed through a decision terminating parental rights.[13]

Second, the stepparent custody statute is carefully limited. It modifies a natural parent's rights only with respect to a custody decision and only in cases where, prior to the other natural parent's death or disability, the other natural parent had custody of the child and the stepparent had been living with them. Thus, the statute applies only to situations where a child has been part of a family unit (either by agreement or court order), and the court must decide whether the child should remain in that family unit after a parent's death or disability. The "institution of the family is deeply rooted in this Nation's history and tradition."[14] The stepparent is not "any other person." He or she is the person who has been parenting the child for what may have been many years. The statute recognizes the strong familial bond that may have developed between a stepparent and child, and it provides the stepparent an opportunity to continue that relationship if that result would be in the best interests of the child.

Finally, we note that Tailor's constitutional concern may have been precipitated, in part, by the Family Court's comments on the effect of the stepparent custody statute. The Family Court evaluated the "best interests" factors identified in 13 *Del.C.* § 722(a) and concluded that those factors "absolutely favor[ ] custody remaining with [Joann]." The trial court went on, however, and stated that the stepparent custody statute "creates an unlevel playing field," "provides a tremendous advantage to the stepparent," and "makes it difficult, if not impossible, for a natural parent to regain custody of their child from a stepparent, who survives the child's other natural parent."

We do not agree with the trial court's characterization of the stepparent custody statute or with its assessment of the impact it will have on natural parents seeking custody from a stepparent. The statute merely places the stepparent in the same position as the natural parent who had obtained custody of the child prior to death or disability. The surviving natural parent who seeks custody has no greater burden than any non-custodial parent. The facts of this case clearly supported the Family Court's conclusion that awarding residential custody to Joann was in Donna's best interests. The same was true when Donna's father was alive and both natural parents sought custody. In a different case, the best interests of the child might favor the surviving natural parent. If not, it will be because the best interest factors favor the stepparent, not because the statute gives stepparents any advantage over natural parents.

### III. Conclusion

Based on the foregoing, we hold that the stepparent custody statute is valid and we affirm the Family Court's decision awarding residential custody to Appellee.

**13.** *Lassiter,* 452 U.S. at 27, 101 S.Ct. at 2159. *See also: M.L.B. v. S.L.J.,* 519 U.S. 102, ——, 117 S.Ct. 555, 566, 136 L.Ed.2d 473 (1996) (Where the Supreme Court noted the important distinction between a loss of custody and a permanent loss of all parental rights.)

**14.** *Michael H. and Victoria D. v. Gerald D.,* 491 U.S. 110, 124, 109 S.Ct. 2333, 2342, 105 L.Ed.2d 91 (1989), quoting *Moore v. East Cleveland,* 431 U.S. 494, 503, 97 S.Ct. 1932, 1937, 52 L.Ed.2d 531 (1977).